IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES DAVID MOODY                         Case No. 3:14-cv-01756-MA

                Plaintiff,            OPINION AND ORDER

    v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

             Defendant.

JEFFERY HUGH BAIRD
Dellert Baird Law Office, PLLC
P.O. Box 3757
Silverdale, WA 98383

    Attorney for Plaintiff

JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

THOMAS M. ELSBERRY
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff James Donald Moody seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3). For the reasons that follow, I affirm the final decision of the Commissioner.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI on November 9, 2010, initially alleging disability as of April 1, 2004 due to a back impairment, post-traumatic stress disorder (PTSD), diabetes mellitus, degenerative disc disease, seizures, and depression.

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). The ALJ held a hearing on April 30, 2013, at which plaintiff appeared with his attorney and testified. A vocational expert, Daniel R. McKinney, Sr., also appeared at the hearing and testified. At the hearing, plaintiff amended his alleged onset date of disability to November 9, 2010. Tr. 48. On July 25, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review and, therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

2 - OPINION AND ORDER

Born in 1964, plaintiff was 49 years old on the date of the ALJ's unfavorable decision. Plaintiff completed the eighth grade and later obtained a General Education Degree (GED). Plaintiff's infrequent work history and minimal earnings do not qualify as past relevant work.

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his application date of November 9, 2010. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative joint disease—cervical spine; degenerative disc disease—lumbar spine; bilateral shoulder impingement syndrome; obesity; coronary artery disease—post stent procedure; diabetes mellitus; asthma; chronic obstructive pulmonary disease; seizure disorder with recent evidence of encephalomalacia and a history of lacunar infarcts; headaches; depressive disorder not otherwise specified (NOS); generalized anxiety disorder; and alcohol dependence disorder. At step three, the ALJ found that plaintiff's impairment or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to light work with the following additional limitations:

> [Plaintiff] could frequently balance, kneel, and crawl; he could occasionally stoop, crouch, and climb ramps or stairs; he could never climb ladders, ropes, or scaffolds; he could occasionally reach overhead; he should avoid concentrated exposure to extreme temperatures and vibrations; he should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and hazards; he would be limited to simple,

3 – OPINION AND ORDER

routine tasks and well-learned, complex tasks; and he would be limited to no more than superficial contact with the general public.

Tr. 29.

At step four, the ALJ found that plaintiff has no past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as small products assembler II, table worker, and inspector/packer. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from November 9, 2010 through the date of the decision.

### ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate the medical opinion evidence; and (2) the ALJ failed to obtain a medical expert.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

4 - OPINION AND ORDER

mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012); *Valentine v. Commissioner of Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## I.   The ALJ Did Not Err in Assessing Medical Opinion Evidence

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(c). To reject the uncontroverted opinion

of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.* at 1149.

Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence. Specifically, plaintiff challenges the weight accorded to the opinions of the following treating or examining sources: John Arnold, Ph.D.; William Shanks, M.D.; physician's assistant William Bomberger; nurse Susan Small; and Catherine MacLennan, Ph.D. Moreover, plaintiff argues that the ALJ erred in giving "significant weight" to the opinions of nonexamining physicians. I address each opinion in turn.

### A.    John Arnold, Ph.D.

In an October 26, 2011 consultative examination, Dr. Arnold opined that plaintiff would be capable of following simple directions and would be most successful in a job with little social interaction with others. Tr. 556. Dr. Arnold also opined that plaintiff would require direct supervision for minimal task completion. *Id.* Dr. Arnold noted that plaintiff scored a 28 out of

30 on the mini-mental status examination (MMSE) and scored within normal limits on the Trails A & B and the Rey 15 tests. *Id.* Dr. Arnold noted that plaintiff's Minnesota Multiphasic Personality Inventory-2 (MMPI-2) result was invalid due to a possible over-reporting of symptoms. *Id.* Based on the examination, Dr. Arnold diagnosed plaintiff with depressive disorder NOS, undifferentiated somatoform disorder, alcohol abuse in early partial remission, rule out PTSD, borderline personality disorder with anti-social features, and rule out borderline intellectual functioning. Tr. 554.

Because Dr. Arnold's opinion was contradicted,[1] the ALJ was required to provide specific and legitimate reasons, backed by substantial evidence, to reject his opinion. *Bayliss*, 427 F.3d at 1216. The ALJ gave Dr. Arnold's opinion less than "significant weight" for three reasons: the opinion's reliance on plaintiff's self-reports, the invalid MMPI-2 score, and ongoing alcohol abuse. Tr. 35.

I begin by noting that plaintiff does not challenge the ALJ's negative credibility assessment. It is well-settled that a physician's opinion premised upon a claimant's properly discounted subjective symptoms and limitations may be disregarded. *Bray v.*

---

[1] In a February 7, 2012 Physical RFC Assessment, nonexamining physician, Alnoor Virji, M.D., opined that plaintiff could perform light level work with a limitation to occasional overhead reaching with both arms. Tr. 120-121.

*Commissioner of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). The record reveals that plaintiff is frequently non-compliant with his medications. Tr. 34, 453, 456, 510, 529. In April 2011, consultative examiner Debra D. Brown, Ph.D. observed symptom exaggeration and diagnosed plaintiff with malingering. Tr. 443. Although not contested, I conclude that the ALJ's adverse credibility determination is readily supported by substantial evidence as a whole.

It is clear that Dr. Arnold's opinion relies heavily on plaintiff's subjective allegations. For example, Dr. Arnold opined that plaintiff's reports of anger issues impact his ability to interact socially in a work setting. Tr. 556. Noting a possible diagnosis of borderline intellectual functioning, Dr. Arnold relied on plaintiff's self-reported history of special education classes. Tr. 554, 556. Plaintiff also denied obtaining a GED to Dr. Arnold. Tr. 556. However, plaintiff testified at the hearing that he obtained a GED while incarcerated at age 21 and denied attending special education classes in his disability application. Tr. 53, 213. Given the unchallenged adverse credibility determination, I conclude that the ALJ appropriately discounted Dr. Arnold's opinion because it is primarily based on plaintiff's subjective report of

symptoms. Accordingly, I find that this is a specific and legitimate reason to partially discredit Dr. Arnold's opinion.

Next, contrary to plaintiff's argument, the ALJ appropriately considered the invalidity of the MMPI-2 score to discount Dr. Arnold's opinion. Dr. Arnold noted that the invalid MMPI-2 score may indicate over-reporting of psychological symptoms, but ultimately attributed it to plaintiff's need for mental health treatment. Tr. 556. In rejecting Dr. Arnold's conclusion, the ALJ cited to plaintiff's "previous pattern of over-reporting [symptoms]" and found that plaintiff purposely over-reported symptoms during the MMPI-2 test. Tr. 34.

In the context of the record as a whole, the ALJ's interpretation of the MMPI-2 score is reasonable. For example, in a March 1, 2011 examination, neurologist William L. Bender, M.D. noted giveaway weakness in testing of muscle strength and exhibition of pain behavior. Tr. 518. In an April 2011 follow-up examination, Dr. Bender questioned plaintiff's motivations regarding his care when plaintiff requested narcotic pain medications for headaches despite a normal EEG test. Tr. 519. Dr. Bender's unchallenged observation of plaintiff's symptom magnification supports the ALJ's interpretation of plaintiff's invalid MMPI-2 test.

Similarly, Dr. Brown reported that plaintiff's Personality Assessment Inventory (PAI) test, a test similar to the MMPI-2, was

invalid due to over-reporting of unlikely symptoms and inconsistencies with his history and clinical interview. Tr. 446. Dr. Brown noted that plaintiff reported visual and auditory hallucinations but "failed to describe anything that sounded like psychosis." Tr. 441. Additionally, Dr. Brown's objective mental findings do not corroborate plaintiff's extensive report of symptoms. For example, Dr. Brown noted that plaintiff scored a 25 out of 30 on the MMSE test and achieved a score within normal limits on the Trails A & B test. Tr. 446. Dr. Brown declined to provide a medical assessment of plaintiff's limitations because plaintiff was "not completely forthcoming in the evaluation." Tr. 444. In fact, plaintiff does not challenge Dr. Brown's diagnosis of malingering or her observations of symptom magnification. I find that the ALJ's rationale is readily supported by substantial evidence, and provides a specific and legitimate reason for discounting Dr. Arnold's opinion.

Finally, the ALJ appropriately discounted Dr. Arnold's opinion on the basis of plaintiff's ongoing alcohol abuse. Based on plaintiff's self-reported sobriety, Dr. Arnold diagnosed plaintiff with alcohol abuse in early partial remission. Tr. 554. However, at the hearing, plaintiff testified to a sober date of April 22, 2012, six months after Dr. Arnold's examination. Tr. 60. In a March 2013 examination, plaintiff reported sobriety as of October 2012. Tr. 609. As the record reflects, plaintiff was widely inconsistent in

reporting his sobriety, and given the unchallenged negative credibility determination, the ALJ appropriately discredited Dr. Arnold's opinion on this basis. Because the ALJ's interpretation is rational and is supported by substantial evidence in the record as a whole, it will not be disturbed. *See e.g., Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (ALJ's findings must be upheld if they are supported by reasonable inferences drawn from the record.).

In summary, I conclude that the ALJ did not err in evaluating Dr. Arnold's opinion and provided three specific and legitimate reasons backed by substantial evidence in the record as a whole.

**B.   William Shanks, M.D.**

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons to discredit the opinion of William Shanks, M.D. Plaintiff's argument fails.

On February 11, 2011, Dr. Shanks examined plaintiff and observed giveaway weakness with testing of his upper and lower extremity muscles. Tr. 356. Dr. Shanks noted that plaintiff complained of pain in his neck and back with all motion of his extremities. Tr. 357. Dr. Shanks also observed a slow, non-antalgic gait and an absence of muscle spasms in plaintiff's back. *Id.* Dr. Shanks further noted intact sensation in both upper extremities. Tr. 358. Dr. Shanks ordered and reviewed plaintiff's cervical and lumbar spine Magnetic Resonance Imagings (MRIs) and x-rays. *Id.*

Based on plaintiff's MRIs, Dr. Shanks diagnosed early degenerative disc disease at C3-4 and C4-5 and minimal findings in the lumbar spine. Tr. 358.

Dr. Shanks opined that plaintiff overreacted on his physical examination. Tr. 359. In a functional assessment form, Dr. Shanks opined that plaintiff can stand for two hours and sit for three hours in an eight-hour workday, lift 20 pounds occasionally and five pounds frequently, but further opined that these limitations would last for two months. Tr. 367. The ALJ provided two specific and legitimate reasons for according Dr. Shanks' opinion "some weight." Having carefully reviewed the record, I conclude that the ALJ's reasoning is supported by substantial evidence.

Plaintiff contends that the ALJ failed to consider that Dr. Shanks' opinion and assessed limitations already account for plaintiff's symptom exaggeration. I disagree.

The ALJ gave less weight to Dr. Shanks' opinion because plaintiff overreacted during the examination. Tr. 31. Specifically, the ALJ found that plaintiff's "presentation at Dr. Shanks' evaluation suggests secondary gain motivation." *Id.* Although Dr. Shanks acknowledged symptom exaggeration, his opinion is largely based on plaintiff's self-report of pain with range of motion in the neck and back. Tr. 357-58; *see, Morgan*, 169 F.3d at 602 (ALJ properly discounted medical opinions based in large part upon claimant's own account of mental health symptoms and limitations);

*see also Hayles v. Colvin*, No. 6:13-cv-01714-HA, 2014 WL 6809795, *4 (D. Or. Dec. 2, 2014) (upholding the ALJ's finding discrediting an examining physician's limitations because the physician noted that plaintiff exaggerated during the examination). Here, Dr. Shanks noted relatively benign objective findings. Tr. 357-58 (documenting a negative straight-leg raise test and intact sensation and that the lumbar spine MRI showed "minimal findings"). Based on the information presented to Dr. Shanks and the minimal objective findings, the ALJ could reasonably discount Dr. Shanks' opinion because it primarily relied on plaintiff's self-reports of pain during the examination.

As the ALJ noted, other medical evidence in the record also suggests secondary gain motivations. Tr. 31. As discussed above, Drs. Brown, Arnold, and Bender observed plaintiff's symptom magnification during otherwise normal examinations. Tr. 446, 518, 556. Dr. Brown's diagnosis of malingering also supports the ALJ's finding of secondary gain. Tr. 33. A review of the medical record reflects few abnormal objective findings and further supports the ALJ's reasoning. *See generally* Tr. 451, 457, 499, 529, 610-11, 623. Although plaintiff attempts to provide a different interpretation of the medical evidence, the ALJ's interpretation is rational, supported by substantial evidence, and thus, must be upheld. *Molina*, 674 F.3d at 1111. Based on substantial evidence in the record, plaintiff's motivation for secondary gain is a specific and

legitimate reason, sufficient in and of itself to reject Dr. Shanks' opinion.

The ALJ also discounted Dr. Shanks' opinion based on the two month duration of the assessed limitations. Tr. 31. Opinions of temporary limitations have little bearing on a plaintiff's long-term functioning. *Carmickle v. Commissioner of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *see also Batson*, 359 F.3d at 1193-94 (plaintiff has the burden of proving an inability to engage in substantial gainful activity due to impairments for a continuous period of twelve months).

Furthermore, plaintiff fails to cite specific evidence in the record demonstrating that Dr. Shanks' limitations have persisted beyond two months. A careful review of the record supports the ALJ's interpretation. For example, an April 2011 examination revealed intact muscle strength, a negative straight-leg raise test, normal gait, intact sensation, and no pain with neck and back movement. Tr. 428-29. A May 2011 examination revealed a normal monofilament test. Tr. 454. A February 2013 examination revealed normal neurological testing, full motor and strength testing, and intact sensation. Tr. 611. Accordingly, the ALJ provided two specific and legitimate reasons, backed by substantial evidence, to partially discount Dr. Shanks' opinion.

14 – OPINION AND ORDER

**C.   Lay Testimony**

Lay witness testimony as to how a claimant's symptoms affect his ability to work is competent evidence, which the ALJ must take into account. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout v. Commissioner of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694.

**1. William Bomberger**

Physician's assistant William Bomberger began treating plaintiff in December 2010. Tr. 498. Mr. Bomberger examined plaintiff in December 2010, February 2011, and March 2011. Tr. 390, 448, 498. In a February 22, 2011 functional assessment, Mr. Bomberger opined that plaintiff is able to stand for four hours in an eight-hour workday, sit for eight hours in an eight-hour workday, and lift 50 pounds occasionally and 25 pounds frequently. Tr. 381. Mr. Bomberger opined that these limitations would persist for three months, and his assessment was signed by a licensed physician. Tr. 382.

In a February 22, 2011 treatment note, Mr. Bomberger noted that plaintiff's back impairments do not preclude him from performing sedentary to light work, but also indicated that plaintiff's epilepsy is disabling. Tr. 392.

15 - OPINION AND ORDER

In giving "some weight" to Mr. Bomberger's functional assessment, the ALJ adopted a majority of the limitations in Mr. Bomberger's opinion. Tr. 29. In fact, the ALJ found that plaintiff is more restricted in terms of lifting only 10 pounds frequently and 25 pounds occasionally. Tr. 29. The ALJ adequately discounted Mr. Bomberger's opinion.

First, the ALJ rejected Mr. Bomberger's assessed four-hour standing limitation because it is inconsistent with objective findings in the record, including his own treatment notes. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (inconsistency with medical evidence is a germane reason for rejecting lay witness testimony). For example, in a February 2011 examination, Mr. Bomberger observed normal range of motion and tenderness in the back, intact sensation and motor strength, and intact gait, balance, and coordination. Tr. 391-92. A June 2011 examination revealed normal respiratory function with clear lungs. Tr. 449. An April 2011 examination noted intact cranial nerves and no motor or sensory deficits. Tr. 451. Moreover, the ALJ found that the objective medical record does not support Mr. Bomberger's opinion that plaintiff's epilepsy is disabling. Tr. 32. Thus, Mr. Bomberger's opinions are inconsistent with his otherwise normal objective findings.

Second, the ALJ rejected the four hour standing limitation because it is a short-term opinion. *Carmickle*, 533 F.3d at 1165. As

the ALJ noted, the medical record does not support a permanent limitation to four hours of standing in an eight-hour workday. *See generally*, Tr. 32, 457, 459, 518, 611. Accordingly, the ALJ provided several germane reasons, backed by substantial evidence to partially accept Mr. Bomberger's functional assessment and reject his opinion regarding plaintiff's epilepsy. *Bayliss,* 427 F.3d at 1218.

### 2. Susan Small

In an April 2, 2013 medical source statement, plaintiff's treating nurse, Ms. Small opined that plaintiff can stand, walk, and sit for less than one hour in an eight-hour workday. Tr. 606. Ms. Small also opined that plaintiff can occasionally lift and carry up to ten pounds and never lift and carry 25 pounds or more. *Id.* Ms. Small further opined that plaintiff cannot bend, squat, or climb but can occasionally reach. Ms. Small also opined in an April 2012 treatment note that plaintiff is unable to work in any capacity. Tr. 596. The ALJ accorded Ms. Small's opinions "little weight" for several reasons.

Plaintiff argues that the ALJ erred in rejecting nurse Susan Small's opinions. Specifically, plaintiff contends that the ALJ did not comply with Social Security Regulation (SSR) 06-03p in evaluating Ms. Small's opinions. Plaintiff's argument fails.

"Opinions from [nurses and physician assistants], who are not technically deemed acceptable medical sources under our rules, are

important and should be evaluated on key issues such as impairment severity and functional effects." Social Security Ruling 06-03p, 2006 WL 2329939, *3 (Aug. 9, 2006). "The fact that a medical opinion is from an acceptable medical source is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an acceptable medical source because . . . acceptable medical sources are the most qualified health care professionals." *Id.* at *5.

Here, the ALJ gave several germane reasons in accordance with SSR 06-03p. First, the ALJ gave Ms. Small's opinions "little weight" because she is not an acceptable medical source.[2] *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996) (overruled on other grounds) (acceptable medical source opinions may generally be accorded more weight than those from other sources such as a nurse practitioner). To be sure, the ALJ thoroughly discussed Ms. Small's opinions with respect to the severity of plaintiff's impairments and functional limitations but ultimately rejected her assessment

---

[2] The opinion of a nurse practitioner is not considered an acceptable medical source, unless the nurse worked under a physician's close supervision. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d); *Taylor v. Commissioner of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011)(holding that a nurse practitioner could be considered a medically acceptable source where she worked under a physician's close supervision and acted as the physician's agent). In this case, plaintiff does not allege that Ms. Small is an acceptable medical source, and the record does not reflect that Ms. Small worked under a physician's close supervision.

of plaintiff's work-related abilities. Tr. 32-33. Thus, the ALJ's first reason is germane.

Second, the ALJ found that Ms. Small's opinions are inconsistent with the objective medical record. *Bayliss*, 427 F.3d at 1218. For example, in an April 2011 treatment note, Nedal Gara, M.D., noted normal respiratory function, no edema, cyanosis, or clubbing, and intact cranial nerves with no motor or sensory deficits. Tr. 451. As discussed above, the objective examinations of Drs. Shank, Bender, Brown, and Arnold, and Mr. Bomberger revealed essentially normal findings. *See generally,* Tr. 357-58, 391-92, 443-44, 449, 499, 518, 556. Indeed, Ms. Small is the only medical provider in the record to prescribe a walker, which is also unsupported by objective findings in the record. Tr. 357, 499, 518, 605. Accordingly, this is another germane reason to reject Ms. Small's assessment. *Valentine*, 574 F.3d at 694.

Third, the ALJ properly found that Ms. Small's opinions are inconsistent with other medical opinions in the record. As the ALJ noted, Dr. Shanks and Mr. Bomberger assessed sitting, standing, and lifting limitations that exceed Ms. Small's functional assessment. Tr. 31-32, 367, 381. While plaintiff reinterprets the medical opinion evidence, the ALJ's interpretation must be upheld because it is rational and supported by substantial evidence. *Molina*, 674 F.3d at 1111.

19 - OPINION AND ORDER

Fourth, as plaintiff correctly contends, the ALJ improperly discredited Ms. Small's opinions based on plaintiff's repeated requests for a note from Ms. Small stating that he is unable to work. Tr. 33. A careful review of Ms. Small's treatment notes does not show plaintiff requesting such an opinion from Ms. Small. Although Ms. Small opined that plaintiff is unable to work in any capacity, this opinion is unsolicited. Tr. 596. I find the ALJ's final reason is not supported by substantial evidence, and thus, it is not germane. However, this error is harmless because the ALJ gave three other germane reasons to reject Ms. Small's opinions. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

Accordingly, as discussed above, the ALJ provided three germane reasons, supported by substantial evidence for rejecting Ms. Small's assessment. *Bayliss*, 427 F.3d at 1218.

### D.  Catherine MacLennan, Ph.D.

Plaintiff challenges the ALJ's evaluation of examining physician Catherine MacLennan, Ph.D. In March 2009, Dr. MacLennan noted mild overt psychomotor agitation, irritated affect, and normal speech. Plaintiff obtained a low score of 21 out of 30 on the MMSE. Tr. 372. Dr. MacLennan diagnosed major depressive disorder and opined that based on plaintiff's description of his daily activities, he is unable to tolerate a full workday. Tr. 375.

Dr. MacLennan noted that "hopefully [the state agency] has information that can be checked to corroborate the veracity of his complaints about his inability getting along with people." Tr. 375.

The ALJ gave three reasons for giving "less weight" to Dr. MacLennan's opinion. Having carefully reviewed the record, I conclude that two of the ALJ's reasons are supported by substantial evidence.

The ALJ rejected Dr. MacLennan's opinion because it is inconsistent with the objective medical evidence. A medical opinion's inconsistency with the objective medical record may constitute an adequate reason to discredit that opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Plaintiff's scant mental health treatment notes do not support Dr. MacLennan's opinion. For example, a July 2011 examination revealed appropriate appearance and affect, unremarkable psychomotor behavior, irritable and depressed mood, and logical thought processes. Tr. 529. A July 2012 examination noted attentive appearance, calm and blunted affect, fair memory and concentration, and logical thought associations. Tr. 571-72. As discussed previously, Drs. Brown and Arnold noted benign mental status findings. Tr. 446, 556. Thus, the ALJ appropriately discredited Dr. MacLennan's opinion based on its inconsistency with the overall objective medical record.

Plaintiff now argues that the ALJ erred in rejecting Dr. MacLennan's opinion on the basis that it is two years prior to plaintiff's amended alleged onset date of disability. I disagree.

"Medical opinions that predate the alleged onset date of disability are of limited relevance." *Carmickle,* 533 F.3d at 1165. In this case, the ALJ discussed Dr. MacLennan's opinion and gave it less weight because it was nearly two years prior to plaintiff's alleged date of disability. Tr. 28. At the hearing, plaintiff amended his alleged onset date of disability to November 9, 2010. Tr. 48. The record is silent regarding plaintiff's amendment of his alleged onset date of disability; I decline to speculate on the rationale behind plaintiff's amendment. *See* Pl. Reply Br. (ECF No. 18) at 4. Therefore, it is reasonable for the ALJ to believe plaintiff's allegation that his disability began on November 9, 2010. Accordingly, I find that the ALJ properly discounted Dr. MacLennan's opinion on the basis that it predated plaintiff's alleged date of disability.

Finally, as plaintiff correctly argues, the ALJ erred in rejecting Dr. MacLennan's opinion on the basis that plaintiff exaggerated on the MMSE test for secondary gain. Specifically, the ALJ found that plaintiff's markedly low MMSE score of 21 suggests secondary gain because "the general cutoff [MMSE] score for exaggeration is 24." Tr. 34. However, there is no evidence in Dr. MacLennan's report or the record as a whole to support the ALJ's

interpretation of plaintiff's MMSE score. Thus, with respect to this particular reason, I find that it is not a specific and legitimate reason to discount Dr. MacLennan's opinion.

However, this error is harmless as the ALJ provided two other specific and legitimate reasons, supported by substantial evidence, to discredit Dr. MacLennan's opinion. *See Burch*, 400 F.3d at 679. Accordingly, the ALJ did not err in evaluating Dr. MacLennan's opinion.

### E.    Nonexamining Physician Opinions

Plaintiff argues that the ALJ erred in giving "significant weight" to the opinions of nonexamining physicians. Plaintiff contends that Matthew Comrie, Psy.D. and Alnoor Virji, M.D. did not provide sufficient explanations for their opinions. This argument is without merit.

In a February 2012 mental assessment, Dr. Comrie opined that plaintiff is capable of recalling, learning and carrying out simple routine work with reasonable consistency with limited public and social contact. Tr. 121-123.

In a February 2012 physical assessment, Dr. Virji opined that plaintiff is capable of light work but is limited to occasional reaching overhead, occasional climbing of ramps and stairs, and should avoid climbing ladders, ropes, and scaffolds as well as concentrated exposure to machinery. Tr. 119-121. The ALJ gave "significant weight" to the opinions of Drs. Virji and Comrie

because their opinions are consistent with the evidence as a whole. Tr. 35.

Both Drs. Comrie and Virji cited to objective findings, plaintiff's dubious credibility, and various medical opinions in the record to adequately support their opinions. Tr. 117-118, 121. For example, Dr. Comrie cited to a treatment note indicating mental status findings within normal limits with an irritable and depressed mood. Tr. 117. As support for his opinion, Dr. Virji cited to the examinations and opinions of Drs. Shanks and Bender, and Mr. Bomberger. Tr. 118. Moreover, both physicians referenced plaintiff's pattern of symptom exaggeration during consultative examinations. Tr. 118.

Contrary to plaintiff's argument, the ALJ has the responsibility, not the nonexamining physician, to weigh and resolve conflicting medical opinions. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("questions of credibility and resolution of conflicts in the testimony are functions solely for the agency").

As discussed previously, the ALJ gave specific and legitimate reasons to discount conflicting medical opinions and found the opinions of Drs. Comrie and Virji consistent with the medical record. Tr. 31, 33-35; *see* 20 C.F.R. 416.927(c) (In evaluating a nonexamining physician's opinion, the ALJ may also consider factors such as consistency with the record and specialization of the

opining physician.). For example, in January 2013, the counseling center discharged plaintiff for poor attendance and failing to return phone calls to reschedule counseling sessions. Tr. 585. Plaintiff's mental status findings have been essentially normal. *See generally* Tr. 463, 499, 529, 556, 571.

Similarly, as the ALJ noted, Dr. Virji's opinion is consistent with the medical record. Tr. 35. Plaintiff's examinations indicate unremarkable objective findings. *See generally*, Tr. 357, 391-92, 449, 451, 454, 499. Additionally, Dr. Virji's opinion is consistent with Mr. Bomberger's functional assessment, aside from a less restrictive standing limitation. Tr. 381. Although Dr. Virji gave great weight to Dr. Shanks' opinion, the ALJ provided specific and legitimate reasons, as discussed above to partially reject Dr. Shanks' functional assessment. Indeed, plaintiff does not specify any additional physical or mental limitations in the record that the ALJ did not properly reject.

Accordingly, I find that the opinions of Drs. Comrie and Virji are supported by substantial evidence in the record, and the ALJ did not err in relying on these opinions. Thus, the RFC finding is supported by substantial evidence as a whole. *See Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995) (the opinion of a nonexamining physician "may serve as substantial evidence when [it is] supported by other evidence in the record" and consistent with it).

II.  **The ALJ Failed to Obtain Medical Expert Testimony**

The ALJ "has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Garcia v. Commissioner of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014). However, the ALJ is generally not obligated to solicit hearing testimony from a medical expert.[3] *See* 20 C.F.R. 416.927(f)(2)(iii) (An ALJ "may . . . ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s).").

A careful review of the record reveals that the ALJ appropriately declined to obtain medical expert testimony. The ALJ assessed plaintiff's mental and physical limitations based on an unambiguous and adequately developed record. *See Tonapetyan*, 242 F.3d at 1150 ("ambiguous evidence, or the ALJ's own finding that the record is inadequate . . . triggers the ALJ's duty to 'conduct an appropriate inquiry'").

Plaintiff appears to argue that the record was inadequately developed with respect to his seizure impairment and that medical

---

[3] The Ninth Circuit has recognized an exception to the ALJ's otherwise permissive use of medical expert testimony where "the medical evidence is not definite concerning the onset date [of disability] and medical inferences need to be made." *Armstrong v. Commissioner of Soc . Sec. Admin.,* 160 F.3d 587, 590 (9th Cir. 1998). In a case involving an indefinite onset date, "SSR 83-20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." *Id.* The onset date of disability is not at issue in this case.

expert testimony was necessary to interpret his brain MRI and assess functional limitations resulting from his seizures. Plaintiff is incorrect.

With respect to plaintiff's brain MRI, the ALJ appropriately relied on the evaluation of neurologist Marie Atkinson, M.D. In a February 2013 examination, Dr. Atkinson observed relatively normal neurological findings with the exception of a slightly antalgic gait. Tr. 610-11. Dr. Atkinson noted that plaintiff's brain MRI revealed encephalomalacia in the left temporal region and multiple white matter ischemic changes. Tr. 33, 658. Dr. Atkinson also noted that the structural change involving his left temporal lobe is an underlying risk factor for epilepsy. Tr. 608. Dr. Atkinson attributed the multiple lacunar infarcts to his uncontrolled hypertension, diabetes, and smoking. Tr. 611. Dr. Atkinson also noted that plaintiff's February 2013 EEG test was negative. Tr. 613.

As the ALJ noted, Dr. Atkinson prescribed Dilantin, an anti-seizure medication and strongly advised plaintiff to stop smoking. Tr. 33, 611. Plaintiff reported to Nurse Small that his seizures markedly improved after starting anti-seizure medication. Tr. 628. Dr. Atkinson also noted that plaintiff's excessive coughing episodes, triggered by smoking, may cause seizures due to a lack of oxygen. Tr. 611. Moreover, Dr. Atkinson only assessed seizure precautions such as avoiding driving, operating heavy machinery,

27 - OPINION AND ORDER

swimming or climbing heights, which are reflected in the RFC finding. *Id.*; *see* Tr. 29 (limitations in RFC finding such as avoiding concentrated exposure to vibration and hazards and never climbing ladders, ropes, or scaffolds).

Moreover, I am unpersuaded by plaintiff's argument that Dr. Atkinson did not assess any work-related limitations because plaintiff was not currently working. "The claimant bears the burden of proving [he] is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) ([Plaintiff] must present complete and detailed objective medical reports of [his] condition from licensed medical professionals."). Here, Dr. Atkinson's evaluation occurred two months before plaintiff's hearing. At the hearing, the ALJ informed plaintiff that he would keep the record open for at least 30 days for plaintiff to submit records of Dr. Atkinson's evaluation. Tr. 93. Consequently, it is reasonable for the ALJ to conclude that Dr. Atkinson did not assess functional limitations beyond seizure precautions because plaintiff's impairment did not cause further restrictions.

Indeed, as discussed above, the ALJ's RFC finding is supported by substantial evidence. Tr. 499, 518, 610–11. The RFC finding adequately reflects plaintiff's mental and physical limitations. Tr. 29. To be sure, plaintiff does not specify any additional cognitive or physical limitations that the ALJ failed to include in the RFC. Given Dr. Atkinson's detailed assessment and the medical

28 - OPINION AND ORDER

evidence as a whole, the ALJ's evaluation of plaintiff's brain impairment and its resulting limitations is supported by substantial evidence.

In summary, the record is unambiguous and adequately developed, and the ALJ did not err in declining to obtain medical expert testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this _10_ day of NOVEMBER, 2015.

Malcolm F. Marsh
Malcolm F. Marsh
United States District Judge

29 - OPINION AND ORDER